THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**Civil Action No.**

**MARK ALLAN**
        Plaintiff.

**v.**

**SAFE HARBOR MARINAS, LLC,**
**SHM MILL CREEK, LLC,**
        Defendants.

### PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES**, Plaintiff Mark Allan ("Plaintiff"), by and through his undersigned attorney, Adam E. Teper, Esq., for his Original Complaint against SHM MILL CREEK, LLC., d/b/a Safe Harbor Allen Harbor, in personam ("Defendant"), SAFE HARBOR MARINAS, LLC, and in support thereof, would respectfully show as follows:

### NATURE OF THE CASE

This is a suit for breach of maritime mechanical service contracts, violations of M.G.L. ch.93a Unfair and Deceptive Trade Practices, Negligent Misrepresentation, and Fraud, arising out of incidents that occurred about, or around July 2022, involving onboard the Vessel/Boat known as "Wandering Off" (the "Vessel"), wherein Plaintiff, the vessel's owner and passenger, was placed in dangerous, and incurred injury and property loss as a result of the unseaworthy, unsafe, unsanitary, and generally despicable conditions of the Vessel, which ultimately sank into the Ocean, as a result of negligent installation of new outboard engines, and tampering with the Vessel's engine systems, by the Defendant's tortious, reckless and negligent conduct.

### JURISDICTION AND VENUE

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

1. Plaintiff's claims against Defendant(s) present an admiralty or maritime case within the jurisdiction of the United States and this Honorable Court pursuant to Article III, section 2 of the U.S. Constitution, 28 U.S.C. section 1333, and are brought pursuant to the General Maritime Law, and any other applicable laws and/or provisions.

2. *Maritime Contract Jurisdiction*. Plaintiff's claim against Defendant(s) for breach of Plaintiff's Maritime Service Contract with Defendant causing injury within maritime and ocean-based locations, invokes admiralty jurisdiction based upon the existence of a "maritime contract." See Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79, 81 (4th Cir. 1967); Stein Hall & Co., Inc. v. S.S. Concordia Viking, 494 F.2d 287, 290 (2d Cir. 1974). The Contract was intended for purchase and installation services related to maritime vessel activities. The Injury occurred while operating in marine waters.

3. *Maritime Tort Jurisdiction*. This Court has concurrent admiralty jurisdiction over Plaintiff's maritime tort claim(s) against Defendant for unfair and deceptive trade practices, fraud and misrepresentation in connection with the formation and breaching performance of a "maritime services contract." See Wiedemann & Fransen APLC v. Hollywood Marine, Inc., 811 F.2d 864 (5th Cir. 1987) (*quoting* Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 266 (1972)). The Injury occurred while operating in marine waters.

4. This Court has jurisdiction over the Defendant(s) as the injuries are a result of violations of the Federal Boat Safety Act (FBSA) of 1971.

5. *Supplemental Jurisdiction*. In the alternative, Plaintiff's claims against Defendants present a case within the jurisdiction of this Honorable Court pursuant to 28 U.S.C. section 1367.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

6. *Venue*, pursuant to M.G.L. c. 223, § 1, is proper in Bristol County, Massachusetts because Plaintiff resides in Massachusetts, had his vessel docked at a Massachusetts' Marina, and took sail within the waters of Massachusetts where the boat ultimately sank, as a result of the Defendant(s), who are a foreign business registered within the Commonwealth. The Plaintiff, Property Damage and evidence of the case are all located within Bristol County, Massachusetts.

## **PARTIES**

7. Plaintiff is Mark Allan, a resident of Bristol County, Massachusetts. Plaintiff's Vessel was docked at a Marina in Bristol County, Massachusetts, and sank in maritime waters off of Bristol County, Massachusetts.

8. The Vessel was a privately owned 2003 twin outboard fisherman vessel known as "Wandering Off," Off. No. 1142003, Hull No. STA31409B303.

9. Defendant SHM MILL CREEK, LLC., d/b/a Safe Harbor Allen Harbor, is a foreign corporation also incorporated under the laws of Rhode Island, with Safe Harbor Themselves being a foreign corporation registered in Massachusetts, and having its principal place of business in 14785 Preston Road Suite 975, Dallas, TX 75254. Defendant Shm Mill Creek, LLC., d/b/a Safe Harbor Allen Harbor, may be served with process by serving its agent for service of process, Corporation Service Company, 222 Jefferson Boulevard, Suite 200, Warwick, RI 02888.

10. Defendant SAFE HARBOR MARINAS, LLC., is a FOREIGN corporation incorporated under the laws of Rhode Island, and having its principal place of business in 14785 Preston Road Suite 975, Dallas, TX 75254. Defendant Organization performed work at a location at 84 Wescott Rd, North Kingstown, RI 02852. Defendant Safe Harbor Marinas,

3

LLC, may be served with process by serving its agent for service of process, Corporation Service Company, 84 State Street, Boston, MA 02109.

## **STATEMENT OF FACTS**

11. Plaintiff, Mark Allan, owns a marine vessel known as "Wandering Off" which is kept at a Marina in Somerset, Massachusetts.

12. The Official Vessel No. for "Wandering Off" was 1142003, registered in Massachusetts.

13. The International Maritime Organization No. for "Wandering Off" was STA31409B303.

14. In October of 2021, Plaintiff entered into a Marine Services Contract with Defendant Safe Harbor for the purchase and installation of two brand new, outboard engines to be installed onto his vessel, "Wandering Off."

15. The Contract, for maritime labor services for the engines and batteries, was for $61,827.35.

16. The "sea trial" which plaintiff alleges did not occur as the Defendant(s) claim, was invoiced for $5,904.89.

17. At some point, originally unbeknownst to Plaintiff, Defendant Company, SHM MILL CREEK, LLC., was purchased by and/or merged with Safe Harbor, LLC.

18. Defendant(s) had possession of Plaintiff's boat from October 2021 to July 1, 2022 for the purposes of purchase and installation of the engines.

19. At all times relevant to the Complaint herein, at no time during the entirety of Defendant(s)' possession of the vessel, Defendant lacked a certified and/or qualified installation technician to perform the contracted services properly and safely.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

20. At all times herein, and unbeknownst to the Plaintiff, Defendant(s) during the botched installation of the outboard engines, drilled an improper hole, about 5/8" into the Hull, below the water-line.

21. This improperly drilled hole also left a groove in the engine's mounting bracket.

22. The hole, drilled below the water-line, created a significant risk to the boat's overall safety and ability to float without sinking.

23. Unbeknownst to the Plaintiff at the time, the improperly drilled hole, was filed and "repaired" using a generic calking substance, and NOT fiberglass resin, as boat hulls are made from.

24. Defendant(s) also cut and spliced wires to various engine batteries, improperly re-connecting Plaintiff's newer solar batteries, causing a systematic failure of the bilge pumps.

25. In July 2022, when Plaintiff was called to come to retrieve his vessel, it was already in the water.

26. Apparently, a "Float Test" had been allegedly conducted by Defendant(s) but Plaintiff was not notified or allowed to be present.

27. At no time herein, was Plaintiff able to discover or visibly see the improperly drilled hole or discover other safety hazards that would lead to the boat sinking.

28. Plaintiff took the boat back into his possession and returned the boat to the marina in Somerset, Massachusetts.

29. Upon deciding to go out for a joy ride, Plaintiff took his vessel out onto the water, on the Massachusetts/Rhode Island line, where the boat malfunctioned, and began to sank.

30. Plaintiff was stranded on a sinking and unsafe marine vessel.

31. Plaintiff's Vessel, along with two, brand-new outboard engines, sank at approximately 1:30am, on July 5, 2022 about 2-3 miles off the coast of Massachusetts.

32. Upon Defendant Safe Harbor Salvaging and towing the maritime wreck, Defendant(s) took possession of the salvaged vessel and transported it to a different facility in Portsmouth, Rhode Island.

33. On Three Separate Occasions, Defendant(s) moved the salvaged wreck to different locations, making it nearly impossible for the Plaintiff to find his vessel and inspect the damages himself.

34. At all times relevant to the Complaint herein, Defendant(s) knowingly and purposefully concealed the salvaged vessel from the Plaintiff.

35. Plaintiff later learned, at some point herein, the Defendant Safe Harbor Location in Portsmouth, RI is where the initial "float test" after installation took place, in which Plaintiff was not notified of.

36. It is now apparent, Defendant(s) also had disconnected the Boat batteries, and improperly cut and/or reconnected solar batteries, thus creating power issues to the engines and the bilge pumps in their entirety.

37. At all times herein, the improperly drilled 5/8" hole below the waterline, coupled with non-working bilge pumps, caused "Wandering Off" to sink, placing Plaintiff at severe risk of personal injury and death.

38. Plaintiff contends, at all times relevant herein, Defendant(s) knowingly and purposefully did not actually perform a proper float test, and created false and inaccurate "reports."

39. At all times herein, the actions of the Defendant(s) knowingly and purposefully withheld information surrounding the improperly drilled hole and the use of generic calk as a

"filler" from all reports related to the safety and "floatability" of the boat after engine installation.

40. The Defendant(s) charged the Plaintiff for the salvaging and tow of the vessel, for an additional $5,163.31.

41. At some point, MONTHS after Defendant(s) has the salvaged wreck in their possession and concealed it from Plaintiff, Plaintiff's insurance company was able to perform their own secondary inspection.

42. Upon inspection, ZERO structural damage was found, except for the hole in the hull, caused by the Defendant.

43. During the inspection by a marine surveyor, they did find a number of issues evidencing Safe Harbor's actions in causing harm to the boat while in their possession for the engine installation, including but not limited to:

   a. Motors being poorly mounted; and

   b. Motor Mounts being poorly or incorrectly sealed; and

   c. Hole drilled into the hull below the water line; and

   d. Wire harnesses attached to the motors were not connected; and

   e. Galvanized hardware was used, and NOT Marine-Grade Stainless Steel; and

   f. Screws securing the Motors were crooked, bent or otherwise not secure and/or watertight; and

   g. Screws securing the motors were missing washers; and

   h. Accessory batteries were improperly reconnected to the bilge pumps.

44. Plaintiff's own maritime/boater's insurance was through AAA in Somerset, Massachusetts.

45. Plaintiff did in fact receive limited compensation, after deductibles, from its OWN insurance policy, but only for:

    a. the loss of the boat itself; and

    b. the two old engines that were no longer installed or present on the vessel (previously removed by the Defendant(s) for the new installation).

46. The Two Brand-New Outboard Engines that had just been installed, were not yet insured at the time of sinking, and no coverage for the engines was available to remedy.

47. Defendant(s), despite performing contracted installation services with two brand newly manufactured engines, failed to provide or cover these engines and installation with any type of warranty coverage.

48. Defendant(s) were sent a demand letter for Unfair and Deceptive Trade Practices under Massachusetts State Law, M.G.L. ch.93a for their actions and misrepresentations.

49. Defendant(s), by and through, what was thought to be an insurance company, Gallagher Bassett, denied the 93a letter and liability.

50. Defendant(s) were sent a subsequent 93a demand letter, and Gallagher Bassett was sent a M.G.L. ch.176d Demand letter claiming an unfair and deceptive bad faith insurance denial.

51. Gallagher Bassett, despite being a Claims Adjuster and denying liability on behalf of Defendant Safe Harbor, claimed they are NOT an insurance company, and not bound by Chapter 176d of Massachusetts Laws.

52. In a bad faith attempt to deny liability, by and through Gallagher Basset, Plaintiff is forced to seek litigation in order to manage the financial damages he has suffered.

53. At no point herein, was the "lack of liability" of the Defendant(s) considered "Reasonably clear."

54. The sinking of the Plaintiff's boat and his life being put at serious risk caused the Plaintiff to suffer mental anguish and conscious pain and suffering.

## CAUSES OF ACTION

## COUNT I – BREACH OF MARITIME SERVICES CONTRACT

55. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

56. Plaintiff and Defendant(s) entered into a contract whereby Plaintiff was to be provided two brand new outboard engines, properly and safely installed into his vessel, where it would safe for sailing and performing tasks as a fisherman.

57. Defendant(s) materially breached this contract with Plaintiff by failing to provide a proper installation of the new engines, failing to ensure safety and security of the boat and ensuring their actions did not cause unsafe conditions, including but not limited to the boat's ability to float, no excess or improperly drilled holes, working electrical systems to and from the engines.

58. Plaintiff's own insurance company covered the damages to the boat, but not the brand-new engines and their installation costs, which were incurred as a result of the Defendant(s)' breach.

59. As a result of Defendant(s)' breach of contract, Plaintiff suffered serious physical and emotional distress as a result of being in the boat as it started to sink away from shore, including but not limited to anxiety, nervousness, loss of the enjoyment of life, property

damage including both the boat itself and two brand new outboard engines, and other related damages.

60. Plaintiff is entitled to damages in the amount of the cost of the two outboard engines and their installation fees, in an amount to be proven at trial.

## COUNT II – UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF M.G.L. Ch, 93a

61. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

62. Defendant Safe Harbor Marinas, LLC., is the owner and manager of Defendant Shm Mill Creek, LLC., d/b/a Safe Harbor Allen Harbor, and is in charge of the services, and daily business operations, whether directly or indirectly.

63. Defendant(s) took exclusive and sole possession of Plaintiff's vessel, "Wandering Off" to install two brand new outboard engines, at Defendants' business location.

64. At some point during the installation, incorrect holes were drilled into the Vessel, below the water line.

65. Those improperly drilled holes were then negligently or recklessly filled with calking, a non-waterproof or salt-water safe material.

66. At all times herein, unbeknownst to the Plaintiff at the time, the installation was performed by a NON-Certified "technician" who was unqualified to perform the work as promised in the contract.

67. As a result of the improper holes, and improper installation of the outboard engines, Plaintiff's Vessel sank, while out in the bay, placing Plaintiff's life at severe risk of injury or death.

68. At all times herein, Defendant(s) knowingly and purposefully misrepresented the incident and details surrounding the improper installation, the sinking, and the damages done to the Plaintiff, as well as downplayed the severity of what had occurred, as well as why it occurred, causing further harm to the Plaintiff.

69. Defendant(s) had knowledge of the fact that their actions were negligent, fraudulent and unlawfully misrepresented, in an attempt to side skirt responsibilities while billing the Plaintiffs for the product and their services despite the destruction of said property as the result of Defendant(s)' actions.

70. At all times herein, Defendant(s) were sent a M.G.L. C.93A demand letter.

71. Defendant(s) failed to mitigate potential damages, but misrepresented facts to Plaintiff in an attempt to side skirt liability.

72. At all times herein, Defendant(s) unlawfully misrepresented all facts of their services, as well as the incident to Plaintiff, causing serious financial damages to Plaintiff.

73. Defendant(s) fraudulently concealed fundamental facts, and information concerning not only the incident that gave rise to the property destruction, but now with regards to liabilities, prior incidents, and technician certifications, furthering the harm done to the Plaintiff.

74. At all times herein, Plaintiffs relied, to their detriment, on the information provided by Defendant(s) as well as their actions and (in)actions and thought the boat was safe to take out to sea.

75. Plaintiff has now, to date, been significantly harmed financially, as a result of the misrepresentations, actions and (in)actions of the Defendant(s).

76. Defendant(s) knew or should have known that their conduct would significantly harm the Plaintiff.

77. While Plaintiff's own insurance company covered the cost of the vessel itself, Defendant(s) harm and destruction of the two brand-new outboard engines, and all costs associated with the negligent installation, were not previously covered, and significant financial damages in excess of $78,000 have been sustained as a result of the contractual breach.

78. As a direct and proximate result of the Unfair and Deceptive Trade Practices of the Defendant(s), Plaintiff suffered property damage, severe emotional distress, financial damages, among other injuries. These injuries caused conscious pain and suffering. Plaintiffs incurred significant expenses and other damages as a result, in amounts to be proven at trial.

79. As a result of the Defendant(s) actions and inactions due to unfair and deceptive trade practices, Plaintiff is entitled to Treble damages, pursuant to statutory law.

## **COUNT III – NEGLIGENCE**

80. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

81. At all times material hereto, Defendant(s) had a duty to provide Plaintiff with a safe and seaworthy vessel, proper installation of purchased machinery, and to exercise reasonable care and effort to avoid subjecting Plaintiff to suffering or inconvenience.

82. Defendant(s), through their agents, servants and/or employees, were careless and negligent by, *inter alia*:

    a. Negligently drilling holes within the Vessel below sea level; and/or

    b. Negligently filling in holes with calking instead of sea-safe resin as required by the Federal Boat Safety Act (FBSA) of 1971.; and/or

    c. Negligently failing to ensure the boat would properly float and not sink; and/or

    d. Negligently failing to have proper procedures in place to ensure power to the Vessel was restored post installation services; and/or

    e. Failing to properly train or ensure training and certification of technicians or employees performing installation services; and/or

    f. Denying Plaintiff the standard of services for which he contracted in advance; and/or

    g. Negligently hiring, contracting, supervising, training, and/or retaining the persons or corporations responsible for the services and installations performed on consumers' Vessels; and/or

    h. Negligently maintaining the Vessel prior to returning Vessel to Plaintiff; and/or

    i. Failing to promulgate and enforce reasonable rules and regulations to ensure the safety of the Vessel and the Plaintiff; and/or

    j.  Failing to observe, obey and enforce applicable safety and sanitation regulations regarding services performed for or on the Vessel.

83. By reason of Defendant's acts and failures to act, Plaintiff endured a miserable, excruciating voyage on his vessel upon its return to his possession, including potential death and serious injury as a result of its sinking, and the risk of actual physical injury, or actual physical injury.

84. While Plaintiff's own insurance company covered the cost of the vessel itself, Defendant(s) harm and destruction of the two brand-new outboard engines, and all costs associated with the negligent installation, were not previously covered, and significant financial damages in excess of $78,000 have been sustained as a result of the negligence.

85. As a proximate result of the Defendant's conduct, Plaintiff was injured in mind and body, as well as significant financial harm and distress, all as plead herein and subject to proof.

### COUNT IV – FRAUDULENT OR NEGLIGENT REPRESENTATION

86. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

87. Plaintiff alleges that Defendant, through their agents, employees, and subsidiaries, made representations as to services being performed by certified technicians.

88. Defendant(s) knew that the installation of the outboard engines to Plaintiff's vessel was done by someone unqualified, and knowingly placed Plaintiff at risk of severe injury or death, as well as placed is property as risk of harm and destruction.

89. Defendant(s) knew the vessel was not seaworthy, after the installation of the outboard engines and the issues created by the negligent installation services provided, but did not

advise Plaintiff the Vessel had and was experiencing problems with its propulsion and/or engine equipment or hull.

90. Plaintiff justifiably relied on the representations made by Defendant(s) when choosing to seek their services in purchasing outboard engines along with installation from, what Plaintiff believed to be, certified marine technicians.

91. Defendans' representations were material, false and misleading, as Plaintiff spent his "maiden voyage" trapped aboard the disabled and sinking Vessel, suffering in dangerous conditions, all of which caused him to suffer actual injury, or the risk of actual physical injury, and significant loss of property as a result.

92. As a consequence of relying on Defendants' representations, Plaintiff has been injured in mind and body, and in property loss and is entitled to damages.

## COUNT V – FRAUD

93. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

94. Plaintiff alleges that Defendant(s), through their agents, employees, and subsidiaries, made representations as to services being performed by certified technicians and the assurances of the installation services herein.

95. Defendant(s) knew that the installation of the outboard engines to Plaintiff's vessel was done by someone unqualified, and knowingly placed Plaintiff at risk of severe injury or death, as well as placed is property as risk of harm and destruction.

96. Defendant(s) knew the vessel was not seaworthy, after the installation of the outboard engines and the issues created by the negligent installation services provided, but did not advise Plaintiff the Vessel had and was experiencing problems with its propulsion and/or engine equipment or hull.

97. Plaintiff justifiably relied on the representations made by Defendant(s) when choosing to seek their services in purchasing outboard engines along with installation from, what Plaintiff believed to be, certified marine technicians.

98. Defendant(s)' representations were material, false and misleading, as Plaintiff spent his "maiden voyage" trapped aboard the disabled and sinking Vessel, suffering in dangerous conditions, all of which caused him to suffer actual injury, or the risk of actual physical injury, and significant loss of property as a result.

99. As a consequence of relying on Defendants' representations, Plaintiff has been injured in mind and body, and in property loss and is entitled to damages.

## **COUNT VI – UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER M.G.L. CH.93A**

100. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

101. The Foregoing acts, omissions, and misrepresentations constitute unfair and deceptive acts by all Defendants in the conduct of Commerce intended for Maritime use and Activities.

102. Each Defendant individually, and together in concert, engaged in this deceptive scheme to conduct improper and unsafe product and installation services, placing Plaintiff's life and property in danger of death and/or destruction.

103. Defendant(s) knew or should have known the installation of outboard engines on maritime vessels by uncertified and/or unqualified individuals would cause a significant risk of bodily injury and/or harm to Plaintiff's property.

104. Defendant(s) negligently performed the contracted installation services unbeknownst to Plaintiff, and knowingly misrepresented both the installation itself and who performed those services to Plaintiff.

105. Defendant(s) did not have Plaintiff's informed consent to have installation services performed by an unqualified individual.

106. As a direct and proximate result of Defendant(s) knowing and purposeful actions, inactions and fraudulent misrepresentations, Plaintiff has suffered conscious pain and suffering, mental anguish, and significant property damage, to which Plaintiff is entitled to Treble damages under State Law.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

107. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

108. Defendant(s)' conduct (both actions and inactions) caused Plaintiff to suffer severe emotional distress.

109. Defendant(s)' conduct was outrageous because a reasonable person would regard their conduct, the negligent installation and repairs of Plaintiff's boat, causing it to stall and sink stranding Plaintiff in the ocean, as intolerable in a civilized society.

110. All Defendant(s)' have knowledge which as business owners, maritime workers, agents, contractors and/or employees, that they have a duty by both State and Federal law to comply with all State and Federal Boat Safety and Maritime Laws, as well as all product and services laws, and have negligently failed to do so, even with extensive knowledge of the problems.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

111. Defendant(s) were and are aware that their failure to remedy such conditions had the potential to severely harm the Plaintiff, by and through his maritime vessel, both physically and mentally.

112. Defendant(s) negligently caused Plaintiff's emotional distress or Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that the Plaintiff was potentially in danger due to the condition of Plaintiff's boat, in which Defendant(s) ignored and failed to remedy.

113. Defendant(s) knew that Plaintiff's emotional distress would probably and reasonably result from their conduct, or that Defendant(s) gave little or no thought to the probable effects of their conduct.

114. Plaintiff suffered severe emotional distress including suffering, anguish, fright, horror, nervousness, anxiety, worry, shock, humiliation, and shame as a result of Defendant(s)' conduct (or lack thereof).

115. Defendant(s)' conduct, albeit negligent in nature, was a substantial factor in the events that caused Plaintiff's severe emotional distress.

116. The acts and/or omissions of Defendant(s), and each of them, actually and proximately caused Plaintiff to suffer harm and economic damages, in amounts according to proof at trial.

### DEMAND FOR JURY TRIAL

Plaintiff Mark Allan hereby demands a Trial by Jury, for all issues so triable.

### PRAYER FOR RELIEF

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**WHEREFORE**, Plaintiff prays for judgment against Defendant(s), and each of them individually and severely, as follows:

1. *AWARD* General Damages for each Count, according to proof; and

2. *AWARD* Special Damages for each Count, in an amount no less than $80,000.00, according to Proof; and

1. *AWARD* Treble Damages under M.G.L. Ch. 93A §2, 9, 11 and attorney fees; and

2. *ALTERNATIVELY*, For Punitive Damages in an amount the Court deems appropriate to punish the Defendant(s) and deter others from engaging in similar misconduct on appropriate legal causes of action; and

3. *AWARD* Prejudgment interest; and

4. *AWARD* Costs of suit, including all Attorney's fees; and

5. Other Awards as this Honorable Court deems Proper.

Respectfully submitted by Plaintiff Mark Allan,

By and through his attorney,

*Adam E Teper ESQ*

Adam E. Teper, Esq.
Teper Legal, PLLC.
312 Wilbur Ave, Unit 9
Swansea, MA 02777
5089744768
Adam@TeperLegal.com
BBO#713714

Original Complaint
Allan v. Safe Harbor, Et Al.